## 1653. PEEPLES *v.* THE STATE.

The evidence did not show that the defendant was in possession of the hog alleged to have been stolen; but even if such possession had been admitted, it was satisfactorily explained by the uncontradicted testimony of a witness who testified that he sold the hog to the defendant.

Accusation of larceny, from Mitchell superior court—Judge Spence. December 28, 1908.

Submitted February 9,—Decided February 20, 1909.

*E. E. Cox,* for plaintiff in error.

*W. E. Wooten, solicitor-general,* contra.

RUSSELL, J. Only one of the several grounds of the motion for new trial need be considered. It is perfectly clear, from a reading of the brief of the evidence, that the verdict finding the defendant guilty is contrary to law, because entirely without any evidence to support it. He was indicted for simple larceny, and charged with theft of a hog which was the property of one Rackley. The indictment does not contain a count charging him with knowingly receiving stolen goods. Rackley testified that a black and white spotted hog was stolen from him in the spring of 1907. He found the hog in the pasture of Mr. Sapp a short time after that, and Sapp told him that he bought the hog from Wash Peeples, the defendant. Sapp also told him that he had sold the hog to the defendant. This conversation was not in the presence of the defendant. When Rackley found the hog in Sapp's lot the hog had been "worked on" and re-marked. The marks had been changed from a crop and underbit in one ear to a split in the right ear and a crop and a split in the left ear. When Rackley spoke to the defendant about the hog, after Sapp had delivered it to Rackley, the defendant "did not claim to have possession of it," and did not acknowledge that he sold him to Sapp. The defendant would not say anything, one way or the other, except that he had lost two pigs that he had bought from Mr. Sapp. The hog had been out of Rackley's pasture only two weeks when found in Mr. Sapp's pasture. Another witness, Rawlins, who had taken up the hog, testified that Sapp and Wash Peeples were in his lot, and that Sapp said, "Wash, that is our hog;" whereupon the defendant remarked, "It looks like the one that I bought." Sapp took the hog from Rawlins' to his lot, where it was found, and agreed to

pay Rawlins fifty cents or a bushel of corn for feeding the hog while Rawlins had it. While Sapp and the defendant were at Rawlins,' Sapp said that he sold the defendant the hog, which Rawlins afterwards saw in Sapp's pasture as he was riding along the road. The defendant proved by Sapp that he (the defendant) originally bought the hog in question from him; and Sapp further swore that later on he bought this same hog back from the defendant. He further swore that neither of the alleged sales was executed; that the hog was never in the possession of Wash Peeples. Sapp's testimony showed that the hog had never been the property of the defendant; and there was no dispute that it had never been in the defendant's possession. Sapp testified, that he let the defendant have it for watering his hogs, that the defendant never paid him for it, and he (Sapp) never parted with the possession of the hog. After some time, according to Sapp's testimony, he decided to buy the hog back from the defendant, and asked him if he would not sell it back to him, and the defendant said he would. Sapp claimed that his brother, as his agent, bought the hog at a pound sale from one McCloud. The defendant, in his statement to the jury, said that Sapp told him that he bought the hog at a pound sale, and would give the hog to him to look after his hogs, but Sapp took it back, and that he (the defendant) had never been in possession of the hog, except to carry it to Rackley's at Sapp's request, after Rackley had claimed it in Sapp's lot and some of the other "boys" had caught the hog for Rackley. From the above statement of the evidence it is very plain that no one ever saw the defendant take the hog; nor did any of the witnesses ever see him in the defendant's possession; so that the defendant's guilt could not be inferred from the circumstance of possession. The evidence is sustained and uncontradicted that the hog was never in the defendant's possession except when the defendant, acting under Sapp's orders and to accommodate Rackley, carried the hog, after Rackley had discovered him in Sapp's pasture, from that pasture to Rackley's. But even if there had been any evidence that the hog had ever been in the defendant's possession, the uncontradicted testimony of Sapp was that he sold the hog to the defendant; and so the defendant's possession was accounted for and shown to be innocent. Even if the evidence be strained as much as possible against the defendant, and it be inferred that

the defendant knew that the hog had been stolen, evidence which might authorize a conviction for knowingly receiving stolen goods does not authorize a conviction under this indictment for simple larceny. There is no evidence in this record, however, which would authorize a conviction of the defendant for receiving stolen goods. Rackley swears that Sapp ought to have known the mark he used on his hogs, and that he thought Sapp did know it, and Sapp admits that he re-marked the hog; but Rackley swore that so far as he knew, the defendant was not acquainted with his mark.

*Judgment reversed.*